# UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF TEXAS

|  |  |
|---|---|
| ————————————————x | |
| : | Civil Action No. 1:18-cv-438 |
| RYAN KLEBBA, on behalf of himself and : | |
| others similarly situated, : | CLASS ACTION COMPLAINT |
| : | |
| Plaintiff, : | Jury Trial Demanded |
| : | |
| v. : | |
| : | |
| NETGEAR, INC., : | |
| : | |
| Defendant. : | |
| ————————————————x | |

## Nature of Action

1.      During the stressful and hectic period following the birth of a child, the most important concern of new parents is the safety of their newborn.

2.      To ensure as much, while trying to obtain a few hours of sleep, many parents purchase baby monitors to keep an eye—and an ear—on their hopefully-sleeping baby.

3.      Attempting to capitalize on this, Netgear, Inc. ("Netgear") released a baby monitor, the Arlo Baby, in approximately May 2017, that promised an "all-in-one" baby monitoring experience, capable of video and audio monitoring, along with a host of other features, from night lights to music playing capability.

4.      A particular feature of the Arlo Baby that Netgear touted was its ability to let consumers monitor their children "anywhere, anytime," and to "always stay connected to the most important things in your life, even when you can't be where they are."[1]

---

[1]      https://www.arlo.com/en-us/products/arlo-baby/Default.aspx (last visited April 30, 2018).

5.     To do so, parents could connect the Arlo Baby to a Wi-Fi network so that its video and audio feeds could be tapped from any number of devices—computers, cellular telephones, tablets—also connected to the internet

6.     This sort of flexibility ostensibly offered a wider range of uses as compared to traditional baby monitors, and thereby commanded a higher price.

7.     Another critical feature of the Arlo Baby that Netgear advertised was the ability to combine it with Netgear's proprietary companion tablet, to be released in Summer 2017.

8.     According to Netgear, the companion tablet promised the unique ability to stream the Arlo Baby to the tablet without an internet connection, thereby allowing consumers to monitor their baby away from Wi-Fi networks like a traditional baby monitor.

9.     However, unbeknownst to consumers who purchased the Arlo Baby, Netgear was unwilling or unable to release its proprietary tablet, thereby depriving consumers of the ability to use the Arlo Baby without an active internet connection.

10.     And, greatly compounding Netgear's failure to release the companion tablet, the Arlo Baby simply did not work.

11.     Indeed, countless consumer complaints point out that the Arlo Baby frequently disconnects and fails to reconnect without manual intervention, leaving the baby monitor unable to perform the single task it was designed to do: provide continuous monitoring of babies while the parents attempted to sleep in a different room.

12.     This left purchasers of the Arlo Baby with little more than a frustrating paperweight, capable of sporadic and unreliable monitoring with less functionality than a conventional baby monitor available for one-tenth of the price of the Arlo Baby.

## Parties

13.    Ryan Klebba ("Klebba") is a natural person who at all relevant times resided in Travis County, Texas.

14.    Klebba purchased an Arlo Baby on or about August 25, 2017.

15.    Netgear is a publicly traded corporation headquartered in San Jose, California, and incorporated in Delaware.

16.    Netgear "is a global networking company that delivers innovative products to consumers, businesses and service providers. Netgear's products are built on a variety of proven technologies such as wireless (WiFi and LTE), Ethernet, and powerline, with a focus on reliability and ease-of-use. Netgear's product line consists of wired and wireless devices that enable networking, broadband access, and network connectivity."[2]

17.    Upon information and belief, Netgear disseminated the misrepresentations and advertisements at issue from its headquarters in California.

## Jurisdiction and Venue

18.    This Court has subject matter jurisdiction over this action under the Class Action Fairness Act, 28 U.S.C. § 1332(d), because, upon information and good faith belief, there are more than 100 members of the proposed classes, some members of the proposed classes and Netgear are citizens of different states, and the amount in controversy exceeds $5 million.

19.    This Court has personal jurisdiction over Netgear because Netgear has sufficient minimum contacts with Texas such that the exercise of jurisdiction by this Court over Netgear is consistent with notions of fair play and substantial justice.

---

[2]    *See* https://investor.netgear.com/overview/default.aspx (last visited April 30, 2018).

20.     Netgear conducts business in Texas and otherwise avails itself of the protections and benefits of Texas law through the promotion, marketing, and sale of the Arlo Baby in Texas; and this action arises out of or relates to these contacts.

21.     Moreover, Netgear's wrongful conduct, as described herein, foreseeably affects consumers in Texas.

22.     Venue is proper before this Court under 28 U.S.C. § 1391(b), as a substantial part of the events giving rise to the claim occurred in this District, and a substantial part of the property that is the subject of the action is situated in this District.

**Factual Allegations**

**I.      Netgear announced and began advertising the Arlo Baby around May 2017.**

23.     Netgear's Arlo business line, focused on connected, "smart" security systems, has been a noteworthy growth driver in Netgear's recent financial success, driving triple-digit growth from 2016 to 2017[3] and continuing to grow through 2018.[4]

24.     Around May 2017, to continue Arlo's precipitous growth, Netgear announced the release of the Arlo Baby, a baby monitor variant of the popular Arlo line of video and camera monitoring products sold by Netgear.

25.     Netgear described the Arlo Baby as a revolutionary "smart" baby monitor, capable of a host of "smart" features—such as the ability to play music or operate as a night light—in addition to its core functionality of video and audio monitoring of babies.

---

[3]     https://www.fool.com/investing/2017/07/27/netgear-inc-crushes-it-on-arlo-demand.aspx (last visited April 30, 2018).

[4]     https://s22.q4cdn.com/334267776/files/doc_presentations/2018/Netgear_Earnings-Presentation-1Q18-Final.pdf (last visited April 30, 2018).

26.    Specifically, the Arlo Baby was advertised with the following features:[5]

# Never Miss a Moment



### High Definition Video

Watch your baby in clear 1080p HD video, day or night, from anywhere.



### Night Vision

See your baby's every move, even in the dark.



### 2-Way Talk

Listen in & talk to your baby, straight from your smartphone.



### Music Player

Soothe your baby to sleep each night with built-in lullabies.



### Air Sensors

Monitor your nursery's air condition, including temperature & humidity.



### Multi-Colored Night Light

Provides your nursery with warm, dimmable ambient lighting.



### Motion and Sound Alerts

Know when your baby is active or crying with smart alerts.



### Rechargeable Battery

Monitor anywhere around your home without having to plug it in.



### Accessories

Additional Arlo Baby character accessories sold seperately.

---

[5]    https://www.arlo.com/en-us/images/documents/arlo_baby_datasheet.pdf    (last    visited    April 30, 2018).

27.     Netgear provided a number of additional related advertisements, promising reliable connectivity, and—at bottom—a functional baby monitor:[6]



28.     Netgear also advertised that the Arlo Baby would allow consumers to "[a]lways stay connected to the most important things in your life, even when you can't be where they are."[7]

29.     Netgear further added: "Arlo Baby is an all-in-one smart baby monitoring camera designed with you and your baby in mind. Get a good night sleep and peace-of-mind knowing you'll never miss a moment."[8]

---

[6]     https://www.arlo.com/en-us/products/arlo-baby/Default.aspx (last visited April 30, 2018).

[7]     *Id.*

[8]     *Id.*

30.     Similar statements adorned every Arlo Baby box:





31.     All of these features served to differentiate the Arlo Baby from traditional baby monitors, in that the Arlo Baby allowed consumers to use the monitor remotely from a host of internet-connected devices, while traditional monitors typically require a corresponding receiver device to connect to the monitor without an internet connection.

32.     And, to accompany the Arlo Baby and negate any potential problems with using an internet-dependent baby monitor, Netgear heavily promoted a companion tablet that it promised as "an excellent addition to your Arlo Baby camera, providing a more focused, uninterrupted monitoring experience of your baby. With this display, the camera can be used even when an Internet connection is not available, so you can take Arlo Baby wherever you go."[9]

33.     Other related advertisements included:





---

[9]      https://www.arlo.com/en-us/images/documents/arlo_baby_datasheet.pdf     (last     visited April 30, 2018).

34.     And Netgear even heavily promoted the tablet to investors, featuring the Arlo Baby and the companion tablet side-by-side in the announcement of the Arlo Baby's release:[10]



...and **Arlo Baby**

The next best thing to being there!

- ♪ Smart Music Player
- ☾ Smart Multi-Colored Night Light
- 〰 Air Sensors
- 📶 Intelligent Motion and Sound Alerts
- ▣ 7" display that connects directly to the camera
- ∞ Battery operation mode for when away from home

---

10

https://s22.q4cdn.com/334267776/files/doc_financials/quarterly/2017/q2/Netgear_IR_Presentation_Q217_-_Final_v3.pdf (last visited April 30, 2018).

35.    In fact, each and every Arlo Baby box contained a brochure promoting the companion tablet as a critical component, necessary to use the Arlo Baby as a traditional baby monitor whenever internet connections were unavailable or unreliable:



36.    Once the Arlo Baby was released, in the second quarter of 2017, Netgear's Arlo division continued to experience significant growth, from 4 million cameras shipped[11] to over 7.5 million cameras shipped in Netgear's most recent fiscal quarter.[12]

---

[11]

    https://s22.q4cdn.com/334267776/files/doc_financials/quarterly/2017/q2/Netgear_IR_Presentation_Q217_-_Final_v3.pdf (last visited April 30, 2018).

[12]    https://s22.q4cdn.com/334267776/files/doc_presentations/2018/Netgear_Earnings-Presentation-1Q18-Final.pdf (last visited April 30, 2018).

## II.     The Arlo Baby fails to perform as advertised.

37.     Klebba's experience with the Arlo Baby—replicated and repeated by consumers across the country—is illustrative of the failure of the device to perform as advertised.

38.     In particular, Klebba purchased an Arlo Baby in August 2017 for $244 at amazon.com in anticipation of the birth of his twin babies, who were born in November 2017.

39.     The price Klebba paid was a significant premium over other competing baby monitors, costing several times as much as many more traditional monitors.

40.     Some time in September 2017, Klebba set up the Arlo Baby in his nursery and experimented with its functionality, where he rapidly realized that the video and audio monitoring features of the Arlo Baby were unreliable and ineffective, and prone to extended bouts of heavy pixelization and static.

41.     At bottom, using the Arlo Baby over an internet connection appeared to strain its core functionality beyond the level at which it could operate.

42.     On September 26, 2017, Klebba attempted to return the Arlo Baby through Amazon, but was informed by Amazon that he was one day outside of the 30-day return period, and his request was denied.

43.     Nevertheless, in November 2017, after bringing his newborn babies home, Klebba attempted to use the Arlo Baby as a baby monitor, and continued to experience difficulty, prompting a discussion with Netgear's tech support staff, who ultimately offered to send him a replacement for his original Arlo Baby, which Klebba accepted in hopes that it would resolve the connection issues he experienced.

44.     This exchange, however, did not resolve any of Klebba's issues with the Arlo Baby's poor visual quality and frequent disconnects.

11

45.     On December 7, 2017, after persistent and repeated discussion with Netgear's tech support employees, Klebba was advised by Netgear's Level 2 Support Expert—the next-level support staff beyond the front-line tech support employees—that the Arlo Baby was unable to maintain a consistent connection with the video monitoring feature active, and that continual monitoring of his babies could only be reliably maintained if Klebba used audio monitoring exclusively.

46.     Then, on December 15, 2017, Klebba experienced the most egregious failure of the Arlo Baby yet.

47.     He had begun sleep training with his babies, intending to allow his babies to cry for a period of time before intervening and soothing them back to sleep, relying on the Arlo Baby's monitoring to determine when he, his wife, or his au pair had to intervene.

48.     By chance, at 2:00 that morning, Klebba's wife woke up and heard that their babies were crying, and determined that this had been ongoing for approximately two hours.[13]

49.     Klebba and his wife were shocked by the realization that their babies were unattended and in potential danger for hours, all because the Arlo Baby was unable to maintain a connection and, once disconnected, failed to reconnect automatically—despite disabling video monitoring and using exclusively audio monitoring, as suggested by Netgear.

50.     In short, the Arlo Baby required regular and continuous supervision, and manual intervention to reconnect the monitoring device—entirely defeating its most basic purpose.

---

[13]     This length of time was confirmed by Klebba's au pair, who was instructed not to intervene when they were crying that night and to leave that to the discretion of Klebba or his wife because they were sleep training their babies, and through notifications from the Arlo Baby device that did not transmit due to the Arlo Baby disconnecting.

51.     After that incident, Klebba purchased a conventional 2.4-ghz wireless audio baby monitor for approximately $20, which never disconnected during his entire use of that product.

52.     But despite the earlier failures of the Arlo Baby, Klebba continued to attempt to troubleshoot and fix the device with Netgear's technical support team.

53.     These efforts were, at one point on February 7, 2018, met with an admission from Netgear that the frequent disconnects of the Arlo Baby were a problem that Netgear was aware of, and that its "engineers are still currently working on a fix for this."[14]

54.     Importantly, Klebba reviewed Netgear's advertisements and product description pages for the Arlo Baby prior to purchasing the product, and he purchased the Arlo Baby in reliance on Netgear's assertions that the Arlo Baby could maintain a stable connection to ensure the safety of his babies.

55.     Klebba would not have purchased the Arlo Baby if he had known that the Arlo Baby was unable to function reliably as a baby monitor due to its frequent disconnects and failures.

56.     Klebba's frustration with the Arlo Baby was not unique to him, as countless other consumers have voiced their complaints with the Arlo Baby being incapable of performing its core task—allowing parents to monitor babies without constant active supervision.[15]

---

[14]     Excerpt of Netgear Tech Support Log, attached as Exhibit A.

[15]     *See, e.g.*, https://www.reddit.com/r/Parenting/comments/8bqzei/arlo_baby_sucks_alternatives/ (last visited April 30, 2018); https://www.apple.com/shop/reviews/HLGM2VC/A/arlo-baby-1080p-hd-monitoring-camera-by-netgear (last visited April 30, 2018); https://community.netgear.com/t5/Arlo-Baby/Intermittent-Arlo-Baby-Camera-Disconnections/td-p/1286080/page/2 (last visited April 30, 2018); https://community.netgear.com/t5/Arlo-Baby/Arlo-Baby-firmware-update-and-connectivity-issues/m-p/1524792 (last visited April 30, 2018).

57.    Examples of recent purchaser reviews—among dozens—illuminate these flaws:[16]



58.    Thus, actual consumer experience deviates dramatically from Netgear's advertisements and warranties regarding the functionality of the Arlo Baby, including that the Arlo Baby enables consumers to "Never Miss a Moment," "Always stay connected to the most important things in your life, even when you can't be where they are," and "Arlo Baby lets you know in a heartbeat whether the noise was something or nothing. With night vision that won't let

---

[16]    https://www.amazon.com/NETGEAR-ABC1000-100NAS-Arlo-Baby-by/product-reviews/B071RD1KSN/ref=cm_cr_dp_d_btm?ie=UTF8&reviewerType=all_reviews&sortBy=recent#R2E2ZM3I44HDM7 (last visited May 1, 2018).

darkness get in the way and HD technology that reveals every detail for complete peace of mind, you won't ever have to leave your baby alone again."[17]

59.     Accordingly, the Arlo Baby—despite being advertised as a baby monitor—was, and remains, unable to reliably perform the single most important task for which it is sold, which is to provide a continuous monitor of babies to allow their supervisors peace of mind that the baby is not entirely unsupervised, even when they are physically separated.

60.     The fact that the Arlo Baby cannot maintain a reliable monitoring connection, and that it requires manual user intervention to reconnect after it initially disconnects, defeats the entire purpose of purchasing a baby monitor, and it ultimately underperformed the conventional baby monitor that Klebba purchased for less than one tenth of the Arlo Baby's price.

61.     Despite these issues—and Netgear's occasional acknowledgement of them—Netgear has refused to refund consumers' purchases of the Arlo Baby.

### III.    Netgear unceremoniously cancelled the Arlo Baby companion tablet.

62.     In part to potentially remove some of the reliability and connectivity problems associated with the Arlo Baby's use over an internet connection, Netgear promised and advertised that it would release a companion tablet to allow the Arlo Baby to function as a traditional baby monitor without the need for an active wireless internet connection.

63.     Yet despite print and electronic advertisements stating that the companion tablet would be released in "Summer 2017," that summer came and went without the tablet's release, and communications to customers were limited.

---

[17]     *See supra* Factual Allegations § I.

64.     On August 23, 2017, a customer service representative for Netgear stated that "[t]he latest information I have on target availability is Quarter 3 of 2017 (Months of July, August, September). I do not have any official release information at this time."[18]

65.     Then, on September 15, 2017, the same customer service representative advised Klebba that the release of the Arlo Baby companion tablet was going to be delayed, "as further development work needs to be done to bring the product's performance to a level that we believe will satisfy our users' expectations."[19]

66.     And then, on March 14, 2018, after months of silence, Netgear announced that the Arlo Baby companion tablet was being cancelled, and instead offered a lackluster consolation to frustrated consumers:

> We wanted to let you know that we no longer plan to release a dedicated display monitor. Instead, we are offering people who bought an Arlo Baby a $30 coupon for an Amazon Fire HD 8 Tablet (16GB, With Special Offers), redeemable on Amazon.com. We think this tablet is a great alternative to the Arlo Baby Touchscreen Display. It works great with the Arlo app, offers great image and audio quality, and is Alexa-enabled so you can take advantage of the voice control capability offered by Amazon Alexa. If you would like to take advantage of this offer, please reach out to the Arlo Customer Support team. Please be prepared to provide your name, email address, and your Arlo Baby serial number/MAC address which can be found under the camera. Once our team has been able to verify your ownership of an Arlo Baby camera, we will respond to you with a one-time use coupon. This offer is only available to owners of Arlo Baby cameras registered before March 31, 2018.[20]

67.     Consumer outrage was pointed and immediate, including:

No.
Just no.
I don't need another tablet. I don't want another tablet.

---

[18]     Netgear Support Forum, *Arlo Baby and Dedicate Touch Screen Monitor*, attached as Exhibit B, at 10.

[19]     *Id.* at 20.

[20]     *Id.* at 54.

What I want is what was promised - a dedicated monitor that connects to the Arlo Baby that circumvents having to connect through wi-fi. Wi-fi is imperfect and susceptible to any weak link in the process - Arlo hardware, phone/tablet hardware, ISP speed and reliability. What this tablet was to do is make the Arlo Baby reliable. And now you're telling me is that I have to rely on a safety device that cannot ensure that reliability.

I want a full refund of your product. Please contact me to set that up immediately.[21]

\* \* \*

I do not accept a $30 coupon.  If that is the only solution, it should be for the full cost of the tablet.  I bought this with the promise of a direct connect monitor.  I do not want it on wifi.

I want a full refund for the camera.  Please let me know how to do this.[22]

\* \* \*

Not very satisfied at the moment. Considering I am burning out my iPad Pro with constant monitoring and connection is lost at least twice a week through WiFi. I am really regretting this purchase. I have been waiting for at least a year if not more to be told sorry it's not going to happen?[23]

68.     In short, instead of being able to use the Arlo Baby as a "traditional baby monitor" with the companion tablet, Netgear merely offered a coupon for a small portion of the price of a conventional Amazon Fire tablet, which still requires an internet connection to operate, thus obviating the benefits of the originally promised companion tablet.

69.     What the advertised companion tablet was to offer—a direct communications link to the Arlo Baby to bypass an internet connection—no third-party tablet like an Amazon Fire or Apple iPad could possibly offer.

---

[21]     *Id.* at 56.

[22]     *Id.* at 57.

[23]     *Id.* at 59.

70.     Without a unique hardware option from Netgear (*i.e.*, the companion tablet), the Arlo Baby is entirely dependent on an internet connection—which, in the real world, has proven to be a glaring weakness of the product.

71.     And, despite numerous consumer complaints and requests for a refund or workable device that could operate without an active internet connection—as originally advertised—Netgear refused to compensate or assist consumers further, depriving them of the ability to use the Arlo Baby as a "traditional baby monitor."

72.     Further exacerbating this problem, Netgear continues to list the companion tablet for sale as an available purchase in its product data sheet on the Arlo Baby website.[24]

73.     Had Klebba known that Netgear had no intention of producing the Arlo Baby companion tablet, enabling him to use the Arlo Baby as a "traditional baby monitor," he would not have purchased the Arlo Baby.

**Class Allegations**

74.     Klebba brings this action as a class action under Federal Rules of Civil Procedure 23(a) and 23(b)(3) on behalf of the following classes:

*Nationwide Class*: All residents of the United States who purchased an Arlo Baby.

*Texas Class*: All residents of the State of Texas who purchased an Arlo Baby.

75.     Excluded from the classes are Netgear, its officers and directors, members of their immediate families and their legal representatives, heirs, successors, or assigns, and any entity in which Netgear has or had controlling interests.

---

[24]     https://www.arlo.com/en-us/images/documents/arlo_baby_datasheet.pdf    (last    visited April 30, 2018).

76. The proposed classes satisfy Rule 23(a)(1) because, upon information and belief, the class members are so numerous that joinder of all of them is impracticable.

77. The exact number of class members is unknown to Klebba at this time and can only be determined through appropriate discovery.

78. The proposed classes are ascertainable because they are defined by reference to objective criteria.

79. The proposed classes satisfy Rules 23(a)(2) and 23(a)(3) because Klebba's claims are typical of the claims of the members of the classes.

80. To be sure, the claims of Klebba and all members of the classes originate from the same conduct, practice, and procedure on the part of Netgear, and Klebba possesses the same interests and has suffered the same injuries as each member of the proposed classes.

81. Klebba satisfies Rule 23(a)(4) because he will fairly and adequately protect the interests of the members of the classes, and he has retained counsel experienced and competent in class action litigation.

82. Klebba has no interests that are irrevocably contrary to or in conflict with the members of the classes that he seeks to represent.

83. There will be little difficulty in the management of this action as a class action.

84. Issues of law and fact common to the members of the classes predominate over any questions that may affect only individual members, in that Netgear has acted on grounds generally applicable to the classes.

85. Among the issues of law and fact common to the classes are:

 a. Whether the Arlo Baby is of the same quality as baby monitors generally acceptable in the market;

b.  Whether the Arlo Baby is fit for the ordinary purposes for which the goods are used;

c.  Whether Netgear's conduct complied with its express warranties regarding the Arlo Baby;

d.  Whether Netgear's conduct complied with implied warranties regarding the Arlo Baby;

e.  Whether Netgear's advertisements regarding the functionality of the Arlo Baby were false or misleading;

f.  Whether Netgear's advertisements regarding the Arlo Baby companion tablet were false or misleading;

g.  Whether Netgear engaged in deceptive or unfair acts and practices in violation of California's False Advertising Law or Unfair Competition Law ("UCL");

h.  Whether Netgear's conduct injured the classes;

i.  Whether Netgear was unjustly enriched by its conduct;

j.  the availability of damages, punitive damages, and/or injunctive relief; and

k.  the availability of attorneys' fees and costs.

86.  A class action is superior to all other available methods for the fair and efficient adjudication of this controversy since joinder of all members is impracticable.

87.  Furthermore, as the damages suffered by individual members of the classes may be relatively small, the expense and burden of individual litigation make it impracticable for the members of the classes to individually redress the wrongs done to them.

88.  As well, even for those class members who could afford to litigate such a claim, it would remain an economically impractical alternative.

89.     In the alternative, the classes may also be certified because:

    a.   the prosecution of separate actions by individual class members would create a risk of inconsistent or varying adjudication with respect to individual class members that would establish incompatible standards of conduct for Netgear;

    b.   the prosecution of separate actions by individual class members would create a risk of adjudications with respect to them that would, as a practical matter, be dispositive of the interests of other class members not parties to the adjudications, or substantially impair or impede their ability to protect their interests;

    c.   Netgear has acted or refused to act on grounds generally applicable to the classes thereby making appropriate final declaratory and/or injunctive relief with respect to the members of the classes as a whole; and/or

    d.   Certification of specific issues such as Netgear's liability is appropriate.

90.     Adequate notice can be given to class members directly using information maintained in Netgear's records, records of its approved vendors, or through notice by publication.

**Causes of Action**

**COUNT I**
**BREACH OF IMPLIED WARRANTY OF MERCHANTABILITY**
**Tex. Bus. & Com. Code § 2.314**
**(On behalf of the Texas Class)**

91.     Klebba repeats and re-alleges each and every factual allegation contained in paragraphs 1 through 90.

92.     Klebba brings this claim on behalf of himself and the Texas Class.

93.     Netgear was at all relevant times a "merchant" with respect to baby monitors under Tex. Bus. & Com. Code § 2.104(a), and a "seller" of baby monitors under § 2.103(a)(4).

94.     The Arlo Baby was at all relevant times a "good" within the meaning of Tex. Bus. & Com. Code § 2.105(a).

95.     A warranty that the Arlo Baby was in merchantable condition and fit for the ordinary purpose for which baby monitors are used is implied by law pursuant to Tex. Bus. & Com. Code § 2.314.

96.     The Arlo Baby, when sold and at all times thereafter, was not in merchantable condition and is not fit for the ordinary purpose for which baby monitors are used.

97.     Specifically, the Arlo Baby is inherently defective in that it cannot maintain a reliable connection to allow consumers to monitor babies for a reasonable period of time without requiring manual intervention and device resets; and the Arlo Baby was not adequately designed, manufactured, and tested.

98.     The Arlo Baby's ability to maintain a reliable connection to allow consumers to monitor babies for a reasonable period of time without requiring manual intervention and device resets is material—and critical—to Klebba and the members of the Texas class, and they would not have purchased the Arlo Baby if they knew about its poor performance and inadequate design.

99.     Netgear was provided notice of these issues by Klebba and by numerous individual consumer complaints, negative reviews, tech support requests, support forum discussions and communications sent by Klebba and others within a reasonable amount of time after the release of the Arlo Baby.

100.     As a direct and proximate result of Netgear's breach of the implied warranty of merchantability, Klebba and the other Texas class members have been damaged in an amount to be proven at trial.

**COUNT II**
**BREACH OF IMPLIED WARRANTY OF FITNESS FOR PARTICULAR PURPOSE**
Tex. Bus. & Com. Code § 2.315
(On behalf of the Texas Class)

101.    Klebba repeats and re-alleges each and every factual allegation contained in paragraphs 1 through 90.

102.    Klebba brings this claim on behalf of himself and the Texas Class.

103.    Netgear was at all relevant times a "merchant" with respect to baby monitors under Tex. Bus. & Com. Code § 2.104(a) and 2A.103(a)(20), and a "seller" of baby monitors under § 2.103(a)(4).

104.    The Arlo Baby was at all relevant times a "good" within the meaning of Tex. Bus. & Com. Code § 2.105(a).

105.    A warranty that the Arlo Baby was fit for the particular purpose for which the Arlo Baby is required and that the buyer is relying on Netgear's skill or judgment to select or furnish suitable goods is implied by law pursuant to Tex. Bus. & Com. Code § 2.315.

106.    The Arlo Baby, when sold and at all times thereafter, was not in merchantable condition and is not fit for the ordinary purpose for which baby monitors are used.

107.    Specifically, the Arlo Baby is inherently defective in that it cannot maintain a reliable connection to allow consumers to monitor babies for a reasonable period of time without requiring manual intervention and device resets; and the Arlo Baby was not adequately designed, manufactured, and tested.

108.    The Arlo Baby's ability to maintain a reliable connection to allow consumers to monitor babies for a reasonable period of time without requiring manual intervention and device resets is material—and critical—to Klebba and the members of the class, and they would not have purchased the Arlo Baby if they knew about its poor performance and inadequate design.

109.   Netgear was provided notice of these issues by Klebba and by numerous individual consumer complaints, negative reviews, tech support requests, support forums discussions and communications sent by Klebba and others within a reasonable amount of time after the release of the Arlo Baby.

110.   As a direct and proximate result of Netgear's breach of the implied warranty of fitness for a particular purpose, Klebba and the other Texas class members have been damaged in an amount to be proven at trial.

**COUNT III**
**BREACH OF EXPRESS WARRANTY**
**Tex. Bus. & Com. Code § 2.313**
**(On behalf of the Texas Class)**

111.    Klebba repeats and re-alleges each and every factual allegation contained in paragraphs 1 through 90.

112.   Klebba brings this claim on behalf of himself and the Texas Class.

113.   Netgear was at all relevant times a "merchant" with respect to baby monitors under Tex. Bus. & Com. Code § 2.104(a), and a "seller" of baby monitors under § 2.103(a)(4).

114.   The Arlo Baby was at all relevant times a "good" within the meaning of Tex. Bus. & Com. Code § 2.105(a).

115.   Netgear, through its advertisements and product labeling, expressly warranted that the Arlo Baby could function as a baby monitor, allowing consumers to "Never Miss a Moment," "Always stay connected to the most important things in your life, even when you can't be where they are," and that the "Arlo Baby lets you know in a heartbeat whether the noise was something or nothing. With night vision that won't let darkness get in the way and HD technology that reveals every detail for complete peace of mind, you won't ever have to leave your baby alone again."

116.    Netgear additionally advertised and warranted that it would release a companion tablet to the Arlo Baby allowing a direct connection between the devices without requiring an active internet connection, thereby allowing the Arlo Baby to function as a "traditional baby monitor" for use when traveling, for example.

117.    Affording Netgear an additional opportunity to cure their breached warranties would be futile, as Netgear has formally cancelled the release of the Arlo Baby's companion tablet, and Netgear has received requests for refunds and complaints about the Arlo Baby's performance that have been rejected or ignored for over six months.

118.    In fact, Netgear continues to list the Arlo Baby companion tablet for sale on the product data sheet for the Arlo Baby.

119.    Also, as alleged in more detail herein, at the time that Netgear sold the Arlo Baby, it knew that the Arlo Baby was inherently defective and did not conform to its warranties or advertised promises, and Netgear wrongfully concealed the defective nature of the Arlo Baby—as well as its intention to not release the companion tablet—from Klebba and the members of the class, who were therefore induced to purchase the Arlo Baby under false or fraudulent pretenses.

120.    The Arlo Baby's ability to maintain a reliable connection to allow consumers to monitor babies for a reasonable period of time without requiring manual intervention and device resets is material—and critical—to Klebba and the members of the Texas class, and they would not have purchased the Arlo Baby if they knew about its poor performance and inadequate design.

121.    Further, the Arlo Baby's inability to function as a "traditional baby monitor" and Netgear's decision to cancel the companion tablet is also material—and critical—to Klebba and the members of the Texas class, and they would not have purchased the Arlo Baby if they knew about its poor performance and inadequate design.

122.     Further still, replacement or repair will not remedy the issues with the Arlo Baby, and because of Netgear's failure to remedy the issues associated with the Arlo Baby, Klebba and the Texas class members seek damages or the revocation of the acceptance of the Arlo Baby and any incidental or consequential damages as allowed.

123.     As a direct and proximate result of Netgear's breach of its express warranties, Klebba and the other Texas class members have been damaged in an amount to be proven at trial.

**COUNT IV**
**BREACH OF IMPLIED WARRANTY OF MERCHANTABILITY**
**Cal. Com. Code § 2.314**
**(On behalf of the Nationwide Class)**

124.     Klebba repeats and re-alleges each and every factual allegation contained in paragraphs 1 through 90.

125.     Klebba brings this claim on behalf of himself and the Nationwide Class.

126.     Netgear was at all relevant times a "merchant" with respect to baby monitors under Cal. Com. Code § 2104(1), and a "seller" of baby monitors under § 2103(1)(d).

127.     The Arlo Baby was at all relevant times a "good" within the meaning of Cal. Com. Code § 2105(1).

128.     A warranty that the Arlo Baby was in merchantable condition and fit for the ordinary purpose for which baby monitors are used is implied by law pursuant to Cal. Com. Code § 2314.

129.     The Arlo Baby, when sold and at all times thereafter, was not in merchantable condition and is not fit for the ordinary purpose for which baby monitors are used.

130.     Specifically, the Arlo Baby is inherently defective in that it cannot maintain a reliable connection to allow consumers to monitor babies for a reasonable period of time without

requiring manual intervention and device resets; and the Arlo Baby was not adequately designed, manufactured, and tested.

131.     The Arlo Baby's ability to maintain a reliable connection to allow consumers to monitor babies for a reasonable period of time without requiring manual intervention and device resets is material—and critical—to Klebba and the members of the class, and they would not have purchased the Arlo Baby if they knew about its poor performance and inadequate design.

132.     Netgear was provided notice of these issues by Klebba and by numerous individual consumer complaints, negative reviews, tech support requests, support forums discussions and communications sent by Klebba and others within a reasonable amount of time after the release of the Arlo Baby.

133.     As a direct and proximate result of Netgear's breach of the implied warranty of merchantability, Klebba and the other class members have been damaged in an amount to be proven at trial.

**COUNT V**
**BREACH OF IMPLIED WARRANTY OF FITNESS FOR PARTICULAR PURPOSE**
**Cal. Com. Code § 2.315**
**(On behalf of the Nationwide Class)**

134.     Klebba repeats and re-alleges each and every factual allegation contained in paragraphs 1 through 90.

135.     Klebba brings this claim on behalf of himself and the Nationwide Class.

136.     Netgear was at all relevant times a "merchant" with respect to baby monitors under Cal. Com. Code § 2104(1), and a "seller" of baby monitors under § 2103(1)(d).

137.     The Arlo Baby was at all relevant times a "good" within the meaning of Cal. Com. Code § 2105(1).

138.    A warranty that the Arlo Baby was fit for the particular purpose for which the Arlo Baby is required and that the buyer is relying on Netgear's skill or judgment to select or furnish suitable goods is implied by law pursuant to Cal. Com. Code § 2315.

139.    The Arlo Baby, when sold and at all times thereafter, was not in merchantable condition and is not fit for the ordinary purpose for which baby monitors are used.

140.    Specifically, the Arlo Baby is inherently defective in that it cannot maintain a reliable connection to allow consumers to monitor babies for a reasonable period of time without requiring manual intervention and device resets; and the Arlo Baby was not adequately designed, manufactured, and tested.

141.    The Arlo Baby's ability to maintain a reliable connection to allow consumers to monitor babies for a reasonable period of time without requiring manual intervention and device resets is material—and critical—to Klebba and the members of the class, and they would not have purchased the Arlo Baby if they knew about its poor performance and inadequate design.

142.    Netgear was provided notice of these issues by Klebba and by numerous individual consumer complaints, negative reviews, tech support requests, support forums discussions and communications sent by Klebba and others within a reasonable amount of time after the release of the Arlo Baby.

143.    As a direct and proximate result of Netgear's breach of the implied warranty of fitness for a particular purpose, Klebba and the other class members have been damaged in an amount to be proven at trial.

## COUNT VI
## BREACH OF EXPRESS WARRANTY
### Cal. Com. Code § 2.313
### (On behalf of the Nationwide Class)

144.    Klebba repeats and re-alleges each and every factual allegation contained in paragraphs 1 through 90.

145.    Klebba brings this claim on behalf of himself and the Nationwide Class.

146.    Netgear was at all relevant times a "merchant" with respect to baby monitors under Cal. Com. Code § 2104(1), and a "seller" of baby monitors under § 2103(1)(d).

147.    The Arlo Baby was at all relevant times a "good" within the meaning of Cal. Com. Code § 2105(1).

148.    Netgear, through its advertisements and product labeling, expressly warranted that the Arlo Baby could function as a baby monitor, allowing consumers to "Never Miss a Moment," "Always stay connected to the most important things in your life, even when you can't be where they are," and that the "Arlo Baby lets you know in a heartbeat whether the noise was something or nothing. With night vision that won't let darkness get in the way and HD technology that reveals every detail for complete peace of mind, you won't ever have to leave your baby alone again."

149.    Netgear additionally advertised and warranted that it would release a companion tablet to the Arlo Baby allowing a direct connection between the devices without requiring an active internet connection, thereby allowing the Arlo Baby to function as a "traditional baby monitor" for use when traveling, for example.

150.    Affording Netgear an additional opportunity to cure their breached warranties would be futile, as Netgear has formally cancelled the release of the Arlo Baby's companion tablet, and Netgear has received requests for refunds and complaints about the Arlo Baby's performance that have been rejected or ignored for over six months.

151.    In fact, Netgear continues to list the Arlo Baby companion tablet for sale on the product data sheet for the Arlo Baby.

152.    Also, as alleged in more detail herein, at the time that Netgear sold the Arlo Baby, it knew that the Arlo Baby was inherently defective and did not conform to its warranties or advertised promises, and Netgear wrongfully concealed the defective nature of the Arlo Baby—as well as its intention to not release the companion tablet—from Klebba and the members of the class, who were therefore induced to purchase the Arlo Baby under false or fraudulent pretenses.

153.    The Arlo Baby's ability to maintain a reliable connection to allow consumers to monitor babies for a reasonable period of time without requiring manual intervention and device resets is material—and critical—to Klebba and the members of the class, and they would not have purchased the Arlo Baby if they knew about its poor performance and inadequate design.

154.    Further, the Arlo Baby's inability to function as a "traditional baby monitor" and Netgear's decision to cancel the companion tablet is also material—and critical—to Klebba and the members of the class, and they would not have purchased the Arlo Baby if they knew about its poor performance and inadequate design.

155.    Further still, replacement or repair will not remedy the issues with the Arlo Baby, and because of Netgear's failure to remedy the issues associated with the Arlo Baby, Klebba and the class members seek damages or the revocation of the acceptance of the Arlo Baby and any incidental or consequential damages as allowed.

156.    As a direct and proximate result of Netgear's breach of its express warranties, Klebba and the other class members have been damaged in an amount to be proven at trial.

## COUNT VII
## BREACH OF WRITTEN WARRANTY
## PURSUANT TO THE MAGNUSON-MOSS WARRANTY ACT
## 15 U.S.C. § 2301, *et seq.*
## (On behalf of the Nationwide Class)

157.    Klebba repeats and re-alleges each and every factual allegation contained in paragraphs 1 through 90.

158.    Klebba brings this claim on behalf of himself and the Nationwide Class, or, in the alternative, on behalf of the Texas Class.

159.    Klebba and the class members are "consumers" within the meaning of the Magnuson-Moss Warranty Act ("MMWA"), 15 U.S.C. § 2301.

160.    Netgear is a "supplier" and "warrantor" within the meaning of § 2301.

161.    The Arlo Baby is a "consumer product" within the meaning of § 2301.

162.    Netgear made written warranties arising under state law regarding the Arlo Baby within the meaning of § 2301(6), for any non-conformities or defects in material or workmanship, comprising an undertaking in writing in connection with the purchase of the Arlo Baby to repair the Arlo Baby or take other remedial action free of charge to Klebba with respect to the Arlo Baby in the event that it failed to meet the specifications set forth therein.

163.    Netgear's warranties were the basis of the bargain of the contract between Klebba and Netgear for the sale of the Arlo Baby to Klebba.

164.    Netgear has been afforded a reasonable opportunity to cure its breach of warranties.

165.    The amount in controversy of Klebba's and the class members' individual claims meets or exceeds the sum of $25.

166.    The amount in controversy of this action exceeds the sum of $50,000, exclusive of interest and costs, computed on the basis of all claims to be determined in this lawsuit.

167.    Resorting to any informal dispute settlement procedure and/or affording Netgear another opportunity to cure these breaches of warranties is unnecessary and/or futile.

168.    Any remedies available through any informal dispute settlement procedure would be inadequate under the circumstances, as Netgear has failed to remedy the problems associated with the Arlo Baby, and, as such, has indicated it has no desire to participate in such a process at this time.

169.    Any requirement—whether under the MMWA or otherwise—that Klebba resort to an informal dispute resolution procedure and/or afford Netgear a reasonable opportunity to cure its breach of warranties is excused and thereby deemed satisfied.

170.    As a direct and proximate result of Netgear's breach of express warranties, Klebba and the members of the classes sustained damages and other losses in an amount to be determined at trial.

171.    Netgear's conduct damaged Klebba and the members of the classes, who are entitled to recover damages, consequential damages, diminution in value of the Arlo Baby, costs, attorneys' fees, rescission, and/or other relief as appropriate, in accordance with 15 U.S.C. § 2310(d).

**COUNT VIII**
**BREACH OF IMPLIED WARRANTY**
**PURSUANT TO THE MAGNUSON-MOSS WARRANTY ACT**
**15 U.S.C. § 2301, *et seq.***
**(On behalf of the Nationwide Class)**

172.    Klebba repeats and re-alleges each and every factual allegation contained in paragraphs 1 through 90.

173.    Klebba brings this claim on behalf of himself and the Nationwide Class, or, in the alternative, on behalf of the Texas Class.

174.     Klebba and the class members are "consumers" within the meaning of the MMWA, 15 U.S.C. § 2301.

175.     Netgear is a "supplier" and "warrantor" within the meaning of § 2301.

176.     The Arlo Baby is a "consumer product" within the meaning of § 2301.

177.     Netgear made implied warranties arising under state law regarding the Arlo Baby within the meaning of § 2301(7).

178.     Netgear's warranties were the basis of the bargain of the contract between Klebba and Netgear for the sale of the Arlo Baby to Klebba.

179.     Netgear has been afforded a reasonable opportunity to cure its breach of warranties.

180.     The amount in controversy of Klebba's and the class members' individual claims meets or exceeds the sum of $25.

181.     The amount in controversy of this action exceeds the sum of $50,000, exclusive of interest and costs, computed on the basis of all claims to be determined in this lawsuit.

182.     Further, Netgear breached these implied warranties because the Arlo Baby does not perform as Netgear represented or it is not fit for its intended use and Netgear did not repair the Arlo Baby's defects; provided the Arlo Baby in a non-merchantable condition, which presents a risk of danger and bodily harm as a result of the defects, and was not fit for the ordinary purpose for which baby monitors are used; provided Arlo Babies that were not fully operational, safe, or reliable; and failed to cure the defects and nonconformities once they were identified.

183.     Netgear violated the MMWA by failing to comply with the implied warranties it made to the class by, among other things: (a) selling Arlo Baby devices that were defective in workmanship, material, or design, requiring constant manual intervention to restart and reconnect the Arlo Baby to monitoring devices; (b) refusing to repair or refund the Arlo Baby after it was

revealed that it was unable to perform as warranted; and (c) warranting that the Arlo Baby could be used as a "traditional baby monitor" with the companion tablet, yet deciding not to release the tablet for consumers.

184.    Resorting to any informal dispute settlement procedure and/or affording Netgear another opportunity to cure these breaches of warranties is unnecessary and/or futile.

185.    Any remedies available through any informal dispute settlement procedure would be inadequate under the circumstances, as Netgear has failed to remedy the problems associated with the Arlo Baby, and, as such, has indicated it has no desire to participate in such a process at this time.

186.    Any requirement—whether under the MMWA or otherwise—that Klebba resort to an informal dispute resolution procedure and/or afford Netgear a reasonable opportunity to cure its breach of warranties is excused and thereby deemed satisfied.

187.    As a direct and proximate result of Netgear's breach of implied warranties, Klebba and the members of the classes sustained damages and other losses in an amount to be determined at trial.

### COUNT IX
### VIOLATIONS OF THE CALIFORNIA FALSE ADVERTISING LAW
### Cal. Bus. & Com. Code § 17500 *et seq.*
### (On behalf of the Nationwide Class)

188.    Klebba repeats and re-alleges each and every factual allegation contained in paragraphs 1 through 90.

189.    Klebba brings this claim on behalf of himself and the Nationwide Class.

190.    California Bus. & Prof. Code § 17500 states: "It is unlawful for any … corporation … with intent directly or indirectly to dispose of real or personal property … to induce the public to enter into any obligation relating thereto, to make or disseminate or cause to be made or

disseminated … from this state before the public in any state, in any newspaper or other publication, or any advertising device, … or in any other manner or means whatever, including over the Internet, any statement … which is untrue or misleading, and which is known, or which by the exercise of reasonable care should be known, to be untrue or misleading."

191.    Netgear caused to be made or disseminated through Texas and the United States, through advertising, marketing and other publications, statements that were untrue or misleading, and which were known, or which by the exercise of reasonable care should have been known to Netgear, to be untrue and misleading to consumers, including Klebba and the class members.

192.    Netgear has violated Cal. Bus. & Com. Code § 17500 because the misrepresentations and omissions regarding the performance, reliability, and functionality of the Arlo Baby as set forth in this complaint were material and likely to deceive a reasonable consumer, and its advertisements of a companion tablet that enabled the Arlo Baby to operate as a "traditional baby monitor" were plainly false, and continue to be false.

193.    Had Klebba and the class known that the Arlo Baby was unable to provide reliable monitoring of babies, requiring frequent manual resets and often shutting off for hours at a time, and that it would not be able to be operated without an active internet connection at all times, he would not have purchased the Arlo Baby.

194.    Absent Netgear's misrepresentations and omissions and other unlawful, unfair, or fraudulent practices, Klebba and the class would not have purchased the Arlo Baby, or would not have purchased it at the price he paid.

195.    All of the wrongful conduct alleged herein occurred, and continues to occur, in the conduct of Netgear's business, and Netgear's wrongful conduct is part of a pattern or generalized course of conduct that is still perpetuated and repeated, both in the State of Texas and nationwide.

196.     As a direct and proximate result of these unlawful, unfair, or fraudulent commercial practices, Klebba and the members of the class have suffered injury in fact including lost money or property as a result of Netgear's practices.

197.     Klebba requests that this Court enter such orders or judgments as may be necessary to enjoin Netgear from continuing its unfair, unlawful, and/or deceptive practices and to restore to Klebba and the members of the class any money Netgear acquired by unfair competition, including restitution and/or restitutionary disgorgement.

**COUNT X**
**VIOLATIONS OF THE CALIFORNIA UNFAIR COMPETITION LAW**
**Cal. Bus. & Com. Code § 17200 *et seq.***
**(On behalf of the Nationwide Class)**

198.     Klebba repeats and re-alleges each and every factual allegation contained in paragraphs 1 through 90.

199.     Klebba brings this claim on behalf of himself and the Nationwide Class.

200.     California Business and Professions Code § 17200 prohibits any "unlawful, unfair, or fraudulent business act or practices."

201.     Netgear's conduct, as described herein, was and is in violation of the UCL in at least the following ways:

- by intentionally concealing from Klebba and the class members that Netgear did not intend to release the Arlo Baby's companion tablet so that the Arlo Baby could be used as a "traditional baby monitor" without requiring an active internet connection;

- by marketing the Arlo Baby as possessing functional and defect-free baby monitoring capabilities; and

- by advertising that the Arlo Baby, in its normal use, would let consumers monitor their children "anywhere, anytime" and let them "always stay connected to the most important things in your life, even when you can't be where they are."

202.    Had Klebba known that the Arlo Baby was unable to provide reliable monitoring of babies, requiring frequent manual resets and often shutting off for hours at a time, and that it would not be able to be operated without an active internet connection at all times, he would not have purchased the Arlo Baby.

203.    Absent Netgear's misrepresentations and omissions and other unlawful, unfair, or fraudulent practices, Klebba would not have purchased the Arlo Baby, or would not have purchased it at the prices he paid.

204.    As a direct and proximate result of these unlawful, unfair, or fraudulent commercial practices, Klebba and the members of the class have suffered injury in fact, including lost money or property as a result of Netgear's misrepresentations and omissions.

205.    Klebba seeks to enjoin further unlawful, unfair, and/or fraudulent acts or practices by Netgear under Cal. Bus. & Prof. Code § 17200.

206.    Klebba requests that this Court enter such orders or judgments as may be necessary to enjoin Netgear from continuing its unfair, unlawful, and/or deceptive practices and to restore to Klebba and the members of the classes any money Netgear acquired by unfair competition, including restitution and/or restitutionary disgorgement, as provided in Cal. Bus. & Prof. Code § 17203.

## COUNT XI
## UNJUST ENRICHMENT
### (On behalf of the Nationwide Class)

207.    Klebba repeats and re-alleges each and every factual allegation contained in paragraphs 1 through 90.

208.    Klebba brings this claim on behalf of himself and the Nationwide Class.

209.    Netgear has benefitted from selling at an unjust profit defective Arlo Baby monitors whose value was artificially inflated by Netgear's concealment of its true characteristics and promises regarding its ability to function as a baby monitor, and Klebba and the class members have overpaid for the Arlo Baby.

210.    Netgear has received and retained unjust benefits from Klebba and the class members, and inequity has resulted.

211.    It is inequitable and unconscionable for Netgear to retain these benefits.

212.    Netgear knowingly accepted the unjust benefits of its fraudulent conduct.

213.    As a result of Netgear's misconduct, the amount of its unjust enrichment should be disgorged and returned to Klebba and the class members, in an amount to be proven at trial.

### Conclusion

**WHEREFORE**, Klebba respectfully requests relief and judgment as follows:

A.  Determining that this action is a proper class action under Rule 23 of the Federal Rules of Civil Procedure;

B.  Adjudging and declaring that Netgear violated the UCL, California's False Advertising Law, and the MMWA, and breached its express and implied warranties to Klebba and the classes;

C.  Declaring that Netgear has engaged in the wrongful conduct alleged;

D.  Awarding Klebba and members of the classes actual, consequential, and/or compensatory damages, and pre-judgment and post-judgment interest;

E.  Awarding injunctive relief, including but not limited to restitution to Klebba and members of the classes;

F.  Awarding Klebba and members of the classes their reasonable costs and attorneys' fees incurred in this action, including expert fees; and

G.  Awarding other and further relief as the Court may deem just and proper.

## TRIAL BY JURY

Klebba is entitled to and hereby demands a trial by jury.

Dated:  May 24, 2018                     Respectfully submitted,

                                         */s/ Aaron D. Radbil*
                                         Aaron D. Radbil
                                         Greenwald Davidson Radbil PLLC
                                         106 E. 6th Street, Suite 913
                                         Austin, TX 78701
                                         Tel: (512) 322-3912
                                         Fax: (561) 961-5684
                                         aradbil@gdrlawfirm.com

                                         Alexander D. Kruzyk
                                         Greenwald Davidson Radbil PLLC
                                         5550 Glades Road, Suite 500
                                         Boca Raton, FL 33431
                                         Tel: (561) 826-5477
                                         Fax: (561) 961-5684
                                         akruzyk@gdrlawfirm.com

                                         *Counsel for Plaintiff and the proposed classes*