# EXHIBIT A



November 11, 2019

**VIA EMAIL AND FIRST CLASS MAIL**

NOTICE TO ALL PARTIES
(Please See Service List)

      Re:    *Klebba, Ryan vs. Netgear Inc.*
              *JAMS Ref. No.: 1110024150*

Dear Counsel:

Enclosed please find the **November 7, 2019 Order** executed by the arbitrator.

Please feel free to contact me should you have any questions.

Thank you,

*Judy Stephenson*

Judy E. Stephenson
Senior Case Manager
jstephenson@jamsadr.com

Enclosure

|  | JAMS |  |
|---|---|---|
| **RYAN KLEBBA** | § | |
| | § | |
| Claimant, | § | |
| | § | |
| | § | |
| v. | § | **JAMS ARBITRATION NO. 1110024150** |
| | § | |
| **NETGEAR, INC.** | § | |
| | § | |
| | § | |
| Respondent. | § | |

## ORDER

Claimant Ryan Klebba, a Texas consumer who purchased an Arlo Baby monitor from Respondent Netgear, Inc., has filed objections to the validity and scope of an arbitration provision contained in the standard online Arlo Terms of Service agreement. Because the term requiring arbitration is unconscionable under California law, the objections are sustained.

### I

### Background

The facts necessary to determine the threshold issue of arbitrability are not in dispute. In August 2017, Klebba purchased an Arlo Baby monitor from amazon.com. Unlike traditional baby monitors, which operate over radio frequencies, the Arlo Baby operates over Wi-Fi and the Internet. This allows customers to view live video and audio recordings of their children from mobile devices, tablets, and laptops. The Arlo Baby is accompanied by a brochure, entitled "Quick Start Guide," that directs customers to create an account on the Arlo website or through a free smartphone app. To create an Arlo account online, a customer must visit a sign-in webpage and populate a set a fields with their first and last name, email address, and password. At the bottom of the page, beneath the fields, is an empty checkbox next to the phrase "I agree to the Terms of Service." If the customer clicks the "Terms of Service" hyperlink, the terms of service for the Arlo Baby are displayed in a new browser window. At the bottom of the terms of service

1

page is a green button labeled "Agree" and a black button labeled "Disagree." If a customer clicks "Agree," he or she returns to the sign-in page, where the checkbox next to the phrase "I agree to the Terms of Service" is automatically checked. Once the customer checks the checkbox, either by reading the terms of service and selecting "Agree," or simply checking the checkbox without reading the terms, he or she can set up an Arlo account. A customer cannot create an Arlo account without agreeing to the terms of service by checking the checkbox.

Klebba created an account on the Arlo website on August 31, 2017. In doing so, he checked the checkbox next to the phrase "I agree to the Terms of Service" without accessing the hyperlink to read the service agreement. The Arlo terms of service is a 15 page, 6,700 word agreement with 26 enumerated sections. Each section contains a heading describing the subject matter of the terms detailed in that part of the agreement. Section 25, entitled "General Information," contains four subsections with discrete headings – "Entire Agreement," "Choice of Law and Forum," "Waiver and Severability of Terms," and "No Right of Survivorship and Non-Transferability." The subsection entitled "Choice of Law and Forum" provides:

> To the extent possible under your local law, these Terms and the relationship between you and Arlo will be governed by the laws of the State of California without regard to its conflict of law provisions.
>
> To the extent possible under your local law, any dispute arising from or relating to the subject matter of this Agreement will be finally settled by arbitration in Santa Clara County, California, using the English language in accordance with the Streamlined Arbitration Rules and Procedures of the Judicial Arbitration and Mediation Services, Inc. ("JAMS") then in effect, by one commercial arbitrator with substantial experience in resolving intellectual property and commercial contract disputes, who will be selected from the appropriate list of JAMS arbitrators in accordance with the Streamlined Arbitration Rules and Procedures of JAMS. Judgment upon the award so rendered may be entered in a court having jurisdiction, or application may be made to such court for judicial acceptance of any award and an order of

enforcement, as the case may be. Any arbitration under this Agreement will take place on an individual basis: class arbitrations and class actions are not permitted.

YOU UNDERSTAND AND AGREE THAT BY ENTERING INTO THIS AGREEMENT, YOU AND NETGEAR ARE EACH WAIVING THE RIGHT TO TRIAL BY JURY OR TO PARTICIPATE IN A CLASS ACTION.

Notwithstanding the foregoing, each party will have the right to institute an action in a court of proper jurisdiction for injunctive or other equitable relief pending a final decision by the arbitrator. For all purposes of this Agreement, the parties consent to exclusive jurisdiction and venue in the United States Federal Courts located in the Northern District of California.

On May 24, 2018, Klebba filed a class action complaint in a Texas federal district court alleging that the Arlo Baby monitor purchased from Netgear does not work as advertised. Specifically, Klebba contends that the video and audio stream are unreliable, that the camera frequently disconnects from the display, and that Netgear never released a companion tablet that would allow the Arlo Baby to function as a traditional baby monitor without the need for an active wireless connection. Netgear filed a motion to dismiss and to compel arbitration. The court found that Klebba formed an agreement to arbitrate when he agreed to the Arlo Terms of Service, but held that any issues regarding the validity and scope of the arbitration agreement must be decided by the arbitrator. *Klebba v. Netgear, Inc.*, No. 1:18-cv-000438-RP, 2019 WL 453364 at *2 (W.D. Tex. Feb. 5, 2019), *citing* JAMS Streamlined Arbitration Rule 8(b). In an attempt to avoid arbitration, Klebba argues that the arbitration provision in the Arlo Terms of Service agreement is unconscionable under California law and, in any event, that his false advertising claim involving the Netgear companion tablet falls outside the scope of the arbitration clause. The issues have been fully briefed by the parties and this matter is ripe for determination.

II

**Applicable Law**

The Federal Arbitration Act ("FAA") requires courts to "place arbitration agreements on an equal footing with other contracts, and enforce them according to their terms." *AT&T Mobility LLC v. Concepcion*, 563 U.S. 333, 339, 131 S.Ct. 1740, 179 L.Ed.2d 742 (2011) (internal citation omitted). Section 2 of the FAA makes agreements to arbitrate "valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2. An arbitration agreement can be invalidated by "generally applicable contract defenses, such as fraud duress, or conscionability, but not by defenses that apply only to arbitration or that derive their meaning from the fact that an agreement to arbitrate is at issue." *Concepcion*, 563 U.S. at 339, *quoting Doctor's Assocs., Inc. v. Casarotto*, 517 U.S. 681, 687, 116 S.Ct. 1652, 134 L.Ed.2d 902 (1996). "Any doubts about the scope of arbitrable issues, including applicable contract defenses, are to be resolved in favor of arbitration." *Tompkins v. 23andMe, Inc.*, 840 F.3d 1016, 1022 (9th Cir. 2016).

Klebba contends that the arbitration provision in the Arlo Terms of Service agreement is unconscionable. Under California law, "the party opposing arbitration bears the burden of proving any defense, such as unconscionability." *Pinnacle Museum Tower Ass'n v. Pinnacle Mkt. Dev. (US), LLC*, 55 Cal.4th 223, 236, 145 Cal.Rptr.3d 514, 282 P.3d 1217 (2012). In order to establish such a defense, the party opposing arbitration must demonstrate that the contract as a whole, or specific clause in the contract, is both procedurally and substantively unconscionable. *Sanchez v. Valencia Holding Co.*, 61 Cal.4th 899, 910, 190 Cal.Rptr.3d 812, 353 P.3d 741 (2015). Procedural and substantive unconscionability "need not be present in the same degree." *Id.* Rather, there is a sliding scale. "[T]he more substantively oppressive the contract term, the

less evidence of procedural unconscionability is required to come to the conclusion that the term is unenforceable, and vice versa." *Id., quoting Armendariz v. Foundation Health Psychcare Servs., Inc.*, 24 Cal.4th 83, 114, 99 Cal.Rptr.2d 745, 6 P.3d 669 (2001).

A

**<u>Procedural Unconscionability</u>**

The procedural element of unconscionability focuses on "oppression or surprise due to unequal bargaining power." *Pinnacle*, 55 Cal.4th at 246. "The oppression that creates procedural unconscionability arises from an inequality of bargaining power that results in no real negotiation and an absence of meaningful choice." *Poulon v. C.H. Robinson Co.*, 846 F.3d 1251, 1348 (9th Cir. 2017), *quoting Grand Prospect Partners, L.P. v. Ross Dress for Less, Inc.*, 232 Cal.App.4th 1332, 1347-48, 182 Cal.Rptr.3d 235 (2015). California courts have held that oppression may be established by showing that the contract was one of adhesion or by showing from the "totality of the circumstances surrounding the negotiation and formation of the contract" that it was oppressive. *Id., quoting Grand Prospect Partners*, 232 Cal.App.4th at 1348. "Surprise involves the extent to which the contract clearly discloses it terms as well as the reasonable expectations of the weaker party." *Chavarria v. Ralphs Grocery Co.*, 733 F.3d 916, 922 (9th Cir. 2013), *citing Parada v. Super. Ct.*, 176 Cal.App.4th 1554, 1572, 98 Cal.Rptr.3d 743 (2009). Procedural unconscionability requires either oppression or surprise. Both are not required. *See Carbajal v. CWPSC, Inc.*, 245 Cal.App.4th 227, 243, 199 Cal.Rptr.3d 332 (2016).

Klebba has made a strong showing that the arbitration provision in the Arlo Terms of Service agreement is procedurally unconscionable. First, the arbitration provision is buried on pages 13 and 14 of a 6,700 word agreement drafted by Netgear that is only available to consumers who set up an account on the Arlo website. There is no clear heading in the terms of

5

service that highlights the arbitration provision. Nor does the arbitration requirement appear in a prominent or special font to differentiate it from the other terms of service.[1] To the contrary, the arbitration clause is contained in the midst of a multi-paragraph section entitled "General Information." Even the subsection heading preceding the arbitration provision does not mention arbitration. The heading references only "Choice of Law and Forum." Thus, the arbitration provision was not clearly disclosed and could easily have been overlooked by the consumer. *See Net Global Mkt., Inc. v. Dialtone, Inc.*, No. 04-56685, 217 Fed.Appx. 598, 601 (9th Cir. 2007) (applying California law) (arbitration clause in the midst of a prolix terms of service agreement under the heading "Miscellaneous" was procedurally unconscionable); *Savaria v. Dynamex, Inc.*, 316 F.R.D. 412, 420 (N.D. Cal. 2015) (applying California law) (same as to arbitration provision formatted identically to other provisions in the agreement and "lay buried in the middle of more than ten pages of mostly boilerplate language"); *Zaborowski v. MHN Gov't Servs., Inc.*, 936 F.Supp.2d 1145, 1152 (N.D. Cal. 2013), *aff'd*, 601 Fed.Appx. 461 (9th Cir. 2014) (applying California law) (same as to arbitration clause near the end of a multi-paragraph document that was not set apart from the rest of the agreement).

Moreover, Klebba was never on notice of the arbitration requirement until *after* he bought and paid for the Arlo Baby. None of Netgear's promotional materials reference arbitration. Nor is arbitration mentioned in the Quick Start Guide or any other documents provided to Klebba at the time of sale. It was not until Klebba set up his Arlo account several weeks later that he had access to the terms of service, one of which is the agreement to arbitrate. This is the quintessential definition of surprise.

---

[1] Section 25 of the Arlo Terms of Service agreement also contains a jury trial waiver and a class action waiver. Those waiver provisions appear in all capital letters immediately following the arbitration provision. However, nothing in the capitalized paragraph mentions or refers to arbitration.

Based on the "totality of the circumstances" and the combined impact of all factors surrounding the terms of service, the arbitrator determines that there is a high degree of surprise which renders the arbitration provision procedurally unconscionable.

### B

### Substantive Unconscionability

Substantive unconscionability centers on the "terms of the agreement and whether those terms are so one-sided as to shock the conscience." *Ingle v. Circuit City Stores, Inc.*, 328 F.3d 1165, 1172 (9th Cir. 2003), *quoting Kinney v. United HealthCare Servs., Inc.*, 70 Cal.App.4th 1322, 1130, 83 Cal.Rptr.2d 328 (1999). An arbitration provision is substantively unconscionable if it is "overly harsh" or generates "one-sided results." *Nagrampa v. MailCoups, Inc.*, 469 F.3d 1257, 1280-81 (9th Cir. 2006), *citing Armendariz*, 24 Cal.App.4th at 114. "[T]he paramount consideration in assessing conscionability is mutuality." *Id.* at 1281, *quoting Abramson v. Juniper Networks, Inc.*, 115 Cal.App.4th 638, 657, 9 Cal.Rptr.3d 422 (2004). California law requires an arbitration agreement to have a "modicum of bilaterality," and an arbitration provision that is "unfairly one-sided" is substantively unconscionable. *Id.*, *citing Armendariz*, 24 Cal.App.4th at 114.

The Arlo Terms of Service agreement includes a unilateral modification clause that allows Netgear to change any term or condition at any time without directly notifying the consumer. Section 1 of the service agreement provides, in relevant part:

> Your registration of the Arlo System through the Arlo Websites as well as use of the Arlo Services is subject to the provisions of these Terms. NETGEAR may at its direction change these Terms. Any changes made to the provisions of these Terms will be updated on the Arlo website. We encourage you to periodically check the Arlo Websites for the current version of these Terms. If you are dissatisfied with any changes to these Terms you may cancel your use of the Arlo Services in accordance with Section 13 of these

>   Terms. Your use of the Arlo Services following notification of the change to the Terms constitutes your acceptance of the Terms, as modified.

There is no question that this modification clause is one-sided. Netgear has the sole discretion to change any of its terms of service, including the agreement to arbitrate disputes arising from or relating to the Arlo Baby. The only way for the consumer to discover any changes is by randomly and repeatedly visiting the Arlo website. If the consumer does not agree to the change, his or her sole recourse is to stop using the product. The consumer cannot return the product for a refund, as Klebba attempted to do. If the consumer continues to use the product after Netgear modifies a term of service, the consumer is forced to accept the change. Multiple federal courts, applying California law, have held that such unilateral modification provisions support a finding of substantive unconscionability. *See Chavarria*, 733 F.3d at 926; *Ingle*, 328 F.3d at 1179; *Sweeney v. Tractor Supply Co.*, 390 F.Supp.3d 1152, 1161 (N.D. Cal. 2019); *Prasad v. Pinnacle Prop. Mgmt. Servs., LLC*, No. 17-CV-02794-VKD, 2018 WL 4599645 at *8-9 (N.D. Cal. Sept. 25, 2018); *Macias v. Excel Bldg. Servs., LLC*, 767 F.Supp.2d 1002, 1011 (N.D. Cal. 2011).

In an effort to minimize the potential for harsh results caused by this one-sided modification clause, Netgear argues that the implied duty of good faith and fair dealing under California law limits unilateral action by a contracting party. Indeed, there is ample authority to support this argument. *See Tompkins*, 840 F.3d at 1033; *Campos v. JPMorgan Chase Bank, NA*, No. 18-CV-06169-JSC, 2019 WL 827634 at *10 (N.D. Cal. Feb. 21, 2019); *Folck v. Lennar Corp.*, No. 3:17-CV-00992-L-NLS, 2018 WL 1726617 at *6 (S.D. Cal. Apr. 10, 2018); *Harris v. TAP Worldwide*, 248 Cal.App.4th 373, 389, 203 Cal.Rptr.3d 522 (2016); *Casas v. Carmax Auto Superstores Cal. LLC*, 224 Cal.App.4th 1233, 1237, 169 Cal.Rptr.3d 96 (2014); *Serpa v. Cal. Surety Investigations, Inc.*, 215 Cal.App.4th 695, 706-07, 155 Cal.Rptr.3d 506 (2013) . While the

ability of one party to unilaterally modify a contract term does not render the agreement per se unconscionable, two aspects of the modification provision in the Arlo Terms of Service agreement tip the scales on substantive unconscionability. First, there is no prohibition against retroactive modification. Second, there is no requirement of advance written notice. Requiring a consumer to troll the Arlo website on a weekly or monthly basis just to see if the terms of service have been modified, and then forcing the consumer to either accept the changed terms or cancel use of the Arlo services that have been bought and paid for, smacks of unfairness. On these facts, and because the Arlo Terms of Service agreement is a contract of adhesion in the first instance, the arbitrator determines that there is at least a moderate degree of substantive unconscionability.[2]

## CONCLUSION

In view of the infirmities with the Arlo Terms of Service agreement, the sliding scale of unconscionability weighs against enforcing the term requiring arbitration. Accordingly, Klebba's objections to arbitration are sustained. His claims against Netgear are not arbitrable.

DATED: November 7, 2019

_____
Hon. Jeff Kaplan (Ret.)
Arbitrator

---

[2] Netgear asks to sever the unilateral modification provision from the Arlo Terms of Service agreement in the event it is found to be substantively unconscionable. Unlike other contract terms, a unilateral modification provision goes to the "making and performance of the agreement to arbitrate" and is not language that courts must disregard. *Net Global Mkt.*, 217 Fed.Appx. at 602, *quoting Republic of Nicaragua v. Standard Fruit Co.*, 937 F.2d 469, 479 (9th Cir. 1991); *see also Macia*, 767 F.Supp.2d at 1012. As a result, the arbitrator declines to sever this provision from the rest of the contract.

## PROOF OF SERVICE BY EMAIL & U.S. MAIL

Re: Klebba, Ryan vs. Netgear Inc.
Reference No. 1110024150

I, Judy Stephenson, not a party to the within action, hereby declare that on November 11, 2019, I served the attached Cover Letter, November 7, 2019 Order and Proof of Service on the parties in the within action by Email and by depositing true copies thereof enclosed in sealed envelopes with postage thereon fully prepaid, in the United States Mail, at Dallas, TEXAS, addressed as follows:

Aaron D. Radbil Esq.
Greenwald Davidson Radbil PLLC
401 Congress Ave.
Suite 1540
Austin, TX   78701
Phone: 512-803-1578
aradbil@gdrlawfirm.com
   Parties Represented:
   Ryan Klebba

Alexander D. Kruzyk Esq.
Greenwald Davidson Radbil PLLC
7601 N Federal Highway
Suite A-230
Boca Raton, FL   33487
Phone: 561-826-5477
akruzyk@gdrlawfirm.com
   Parties Represented:
   Ryan Klebba

Quyen Ta Esq.
Gabriel R. Schlabach Esq.
Boies Schiller & Flexner LLP
44 Montgomery St.
41st Floor
San Francisco, CA   94104
Phone: 415-293-6800
qta@bsfllp.com
gschlabach@bsfllp.com
   Parties Represented:
   Netgear, Inc.

I declare under penalty of perjury the foregoing to be true and correct. Executed at Dallas, TEXAS on November 11, 2019.

*Judy Stephenson*
Judy Stephenson
jstephenson@jamsadr.com